## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND


MICHAEL LEE BAKER                    *

Petitioner                          *

v                                   *            Civil Action Case No. CCB-11-430

STATE OF MARYLAND                   *

Respondent                              *
                                      ***

### MEMORANDUM

Pending is Michael Lee Baker's petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.   Respondent, the State of Maryland, by its counsel has filed a response requesting

dismissal of the petition, ECF No. 20, to which Baker has replied.  ECF No. 21.[1]  A hearing is

unnecessary to resolve the issues.  *See* Rule 8, "Rules Governing Section 2254 Cases in the

United States District Courts," and Local Rule 105.6 (D. Md. 2011).  For reasons to follow, the

court will deny the petition and a certificate of appealability.

### BACKGROUND

#### A.  Procedural History

In 2002, Baker was convicted by a jury sitting in the Circuit Court for Harford County of

first-degree assault, second-degree assault, and use of a handgun in the commission of a crime of

violence.  ECF No. 5, Ex. 2, at 1.  His 2002 conviction was reversed by the Court of Special

Appeals of Maryland in 2004 [2] for trial court error by refusing to ask two voir dire questions

proposed by the defense and because police questioning after Baker had been charged and

---

[1] Baker, who is self-represented in this proceeding, titled his reply as a "Motion to Correct the Record as Indicated per Criteria Established in 18 U.S.C and the Rules Governing 2254 Cases."  ECF No. 21.

[2] *See Baker v. State*, 853 A.2d 796, 798 (Md. App. 2004).

released on bail violated his Sixth Amendment right to counsel.  *Id.* at 2.

On July 11, 2005, Baker was retried before a jury on the same offenses.  ECF No. 20, Exs. 8–11.  After the parties litigated several pretrial motions, a jury was empaneled, the trial judge issued preliminary jury instructions, and the prosecutor presented his opening statement, Baker moved to discharge his counsel and to proceed pro se.  ECF No. 20, Ex. 8, at 173–78.  The trial judge cautioned Baker before granting his request, and Baker was subsequently convicted by the jury of first-degree assault and use of a handgun in the commission of a crime of violence.  ECF No. 20, Ex. 11, at 747.   On September 12, 2005, Baker's motion for a new trial was denied and he was sentenced to serve twenty years in prison, all but nine years suspended, with two years of probation and credit for time served.  ECF No. 5, Ex. 2, at 4; ECF No. 20, Ex. 12, at 795.

Baker, through counsel, appealed his conviction to the Court of Special Appeals, raising the following issues: 1) his discharge of trial counsel was defective under Maryland Rule 4-215 because he was not informed of the maximum sentence for use of a handgun in the commission of a crime of violence, and 2) the trial court erred in denying his motion for a new trial.  ECF No. 20, Ex. 13.  On October 10, 2007, the Court of Special Appeals of Maryland affirmed Baker's convictions and held that because meaningful trial proceedings had transpired before Baker requested to discharge his counsel, Maryland Rule 4-215 was inapplicable.  ECF No. 5, Ex. 2, at 7–10.  The court concluded that notwithstanding his waiver of the claim, Baker failed to show the trial court abused its discretion by granting his informed and voluntary request to proceed pro se.  *See id.* at 9.  In addition, the court found no abuse of discretion in the denial of Baker's motion for new trial.  *See id.* at 12–13.  Baker filed a self-represented petition for a writ of

certiorari, asking the Court of Appeals of Maryland to review whether the intermediate appellate court erred in denying his request to file a pro se supplement to his appellate brief and whether the intermediate appellate court erred in upholding the trial court's denial of his motion for new trial. ECF No. 20, Ex. 15. On December 17, 2007, the Court of Appeals of Maryland declined review. ECF No. 5, Ex. 3.

On September 30, 2008, Baker filed a petition for state post-conviction relief in the Circuit Court for Harford County which, as supplemented, litigated, and construed, alleged: A) the trial court erred by (1) denying his request for release on his own recognizance prior to his second trial, (2) replacing a sitting juror with an alternate during the trial, (3) failing to command the attendance of a witness, and (4) informing the jury by instruction that there had been a prior trial; B) the prosecutor improperly vouched for the character of the victim; and C) ineffective assistance of appellate counsel. ECF No. 20, Ex. 16; Pet. 2, ECF No. 1; Supplemental Pet. Post-Conviction Relief, ECF No. 1-2. On October 29, 2009, the Circuit Court for Harford County held a hearing on Baker's post-conviction petition, and denied relief. ECF No. 20, Ex. 16.[3]

Baker filed an application for leave to appeal the post-conviction court's denial of relief. Baker asserted: A) the trial court erred by (1) failing to place him on his own recognizance prior to his second trial, (2) refusing to help him obtain attendance of a witness, and (3) replacing a sitting juror with an alternate during trial; B) the State improperly vouched for the character of the victim; and C) his appellate counsel should have been required to testify at his post-conviction hearing. Pet. 3, ECF No. 1; Application for Leave to Appeal, ECF No. 1-1. On June 29, 2011, the Court of Special Appeals of Maryland summarily declined further review. ECF

---

[3]   Respondent has provided only the portion of the post-conviction transcript that comprises the  order denying post-conviction relief.  Counsel for respondent states he does not possess the post-conviction transcript in its entirety. Mem. 2 n.1, ECF No. 20.

No. 20, Ex. 17.

Baker filed his § 2254 petition on February 16, 2011.  The Department of Parole and Probation terminated supervision and probation on the underlying case on February 25, 2011. ECF No. 20, Ex. 18.

Respondent initially sought to dismiss the petition for failure to exhaust state remedies.  ECF No. 5.  Subsequently, as discussed above, the Court of Special Appeals in *Baker v. State of Maryland*, No. 2426 (June 29, 2011, September Term 2009), denied Baker's motion for leave to appeal.  ECF No. 20, Ex. 17.  On September 21, 2011, this court denied the request for dismissal for failure to exhaust and directed respondent to file a show cause response to the petition.

## B.  Factual History

The facts adduced at the 2005 trial are that in the early morning hours of June 21, 2001, Baker, by his own admission, used a handgun to shoot Daniel Gray in the hand.  *See* ECF No. 20, Ex. 10, at 582–603, & Ex. 11, at 614–24, 707–09, 714, 719–20.  The shooting occurred in a beauty salon located in Bel Air, Maryland, owned by Baker's one-time girlfriend and business associate, Gracia Kubanek.  *See id*.  Baker claimed he shot Gray to defend Kubanek, whom Baker alleged was being assaulted sexually by Gray.  Baker claimed that shooting Gray was the only option available to protect Kubanek from imminent bodily harm.  *See id*.  Gray testified at trial that Kubanek had invited him to the salon and that they were consensually kissing when Baker entered the salon and shot him.  *See, e.g*., ECF No. 20, Ex. 9, at 190–200.

According to Gray, Baker, in a jealous rage, first yelled at Kubanek and then began yelling at Gray.  *See id*.  After Gray had a brief exchange with Kubanek about whether Gray should leave, Gray looked up and saw Baker pointing a gun at him, which Baker then

4

fired, hitting Gray's hand. *See id*.

Kubanek was unavailable at trial. Her prior sworn testimony from Baker's first trial was admitted at the request of the defense. ECF No. 20, Ex. 10, at 443–44, & Ex. 8, at 122. Kubanek's testimony regarding the altercation and shooting was consistent with Gray's testimony. She also stated that, although Gray's sexual advances were not welcomed, they were not forceful. ECF No. 20, Ex. 10 at 448–62. Kubanek stated the shooting left her in a state of "shock," prompting her to say to Baker: "What are you doing, you crazy man? What are you doing?" *Id*. at 459.

## JURISDICTION

The habeas statute requires a petitioner seeking relief to be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)). The in-custody requirement is jurisdictional. *See id*. at 490.

Respondent requests dismissal of the petition on the grounds that Baker is no longer in custody and his release rendered the petition moot. As noted above, Baker filed his federal habeas corpus petition on February 16, 2011, and the Department of Parole and Probation closed his case on February 25, 2011. Baker was therefore presumably in custody when he filed his petition. *See Jones v. Cunningham*, 371 U.S. 236, 242 (1963) (noting the relevant inquiry is whether the petitioner's status subjects him to a restraint on liberty or the imminent threat of such restraint); *U.S. v. Pregent*, 190 F. 3d 279, 283 (4th. Cir. 1999) (stating supervised release

satisfies the custody requirement).

Baker does not dispute that he is no longer in custody or under supervision on the basis of the judgment challenged in this petition, nor does he allege a continuing collateral consequence resulting from his judgment of conviction. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Baker instead opposes dismissal of the petition as moot on the grounds that there were "time line" abuses during trial and appeal to place his case in a "moot position." ECF No. 21, at 1.[4] Baker alleges "[r]espondent wants this court to allow the state justice system to eliminate Habeas Corpus review by the Federal Court using . . . [a] road map of unreasonable delays and abuses in Due Process procedures." *Id.*[5] To the extent Baker is challenging his sentence to gain his release from custody, this case has in fact been rendered moot. *See Lane v. Williams*, 455 U.S. 624, 631 (1982) (holding habeas petitions moot after prisoners' sentences expired and prisoners attacked only their sentences); *Wallace v. Jarvis*, 423 Fed. Appx. 328 (4th Cir. 2011).[6] In this case, however, it appears that Baker also intends to attack the fact of his underlying conviction. Pet. 13, ECF No. 1. In any event, the petition provides no grounds for relief.

---

[4] Baker cites the following examples of "time line abuse":

> A)   14 months to get transcripts from the 1st unfair trial while sentence was running.
> B)   Keeping the sentence running by denying an Appeal bond unfairly pending an Appeal reversal.
> C)   Holding [him] in jail unfairly for 11 months (using the unfair conviction) keeping the sentence running after the reversal, before giving a third trial.
> D)   Holding a decision to not review a denied Post Conviction Disposition for 17 months by the same judges who made the direct appeal decision which was under question for errors in the Post Conviction Action.

ECF No. 21, at 1.

[5]   Nothing in the record suggests the State deliberately engaged in dilatory tactics to render the instant petition moot. Baker's assertions in this regard lack merit.

[6] An unpublished opinion is cited not for any precedential value but for the consistency of its reasoning on this issue.

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S .C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005) (quoting *Lindh*, 521 U.S. at 333 n.7). This standard is "difficult to meet." *Cullen v. Pinholster*, 563 U.S. __, __, 131 S. Ct. 1388, 1398 (2011) (quoting *Harrington v. Richter*, 562 U.S. __, __ 131 S. Ct. 770, 786 (2011)).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, "an unreasonable

application of federal law is different from an incorrect application of federal law." *Id*. at 785

(quoting *Williams*, 529 U.S. at 410).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely

because the federal habeas court would have reached a different conclusion in the first instance."

*Wood v. Allen*, __U.S. __, 130 S. Ct. 841, 849 (2010). "[E]ven if reasonable minds reviewing

the record might disagree about the finding in question," a federal habeas court may not conclude

that the state court decision was based on an unreasonable determination of the facts. *Id*.

(internal quotation marks and citation omitted). "[A] federal habeas court may not issue the writ

simply because [it] concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, __ U.S. __,

130 S. Ct. 1855, 1862 (2010) (quoting *Williams*, 529 U.S. at 411).

The habeas statute provides that "a determination of a factual issue made by a state court

shall be presumed to be correct," and the petitioner bears "the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where

the state court conducted an evidentiary hearing and explained its reasoning with some care, it

should be particularly difficult to establish clear and convincing evidence of error on the state

court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where

state courts have "resolved issues like witness credibility, which are 'factual determinations' for

purposes of Section 2254(e)(1)." *Id*. at 378 (quoting *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th

Cir. 2003)). Under this standard of review, the court now turns to Baker's claims.

## DISCUSSION

Baker's claims are: A) the trial court (1) denied him compulsory process by not

commanding the attendance of a witness, (2) improperly excused a sitting juror after voir dire,

and (3) denied him a fair trial by not releasing him on his own recognizance after his first

conviction was reversed on appeal; B) the prosecution obstructed justice; and C) he received

ineffective assistance of appellate counsel.  Pet. 4–13, ECF No. 1.  As relief, Baker asks for

vacatur of his state judgment and other appropriate relief.  *See id.* at 13.

### A.  Compulsory Process

Baker claims that the trial court denied him his right to compulsory process by failing to

secure the presence of Linda Davis as a witness.  Pet. 4, ECF No. 1.  Linda Davis was a social

worker who deals with victims of sexual assault.  ECF No. 1-1, at 3–4; ECF No. 20  Ex. 11, at

607; ECF No. 20, Ex. 12, at 763–71.  Linda Davis never interviewed Ms. Kubanek or anyone

else in Baker's case.  ECF No. 20, Ex. 12, at 767.  A post-trial proffer was made by defense

counsel that she would have testified as an expert as to the effects of sexual attacks on victims

and give her opinion that it is not unusual for a victim of a sexual attack not to report or admit

the fact of the attack.  *See id.* at 766 (defense counsel's post-trial proffer as to substance of

expert's opinion).

Whether Baker was denied compulsory process was presented in the context of his

appellate claim that the trial court abused its discretion by denying him a new trial.  ECF No. 20,

Ex. 13, at 9.  The Court of Special Appeals of Maryland rejected the argument as follows:

> [Baker's] second ground for a new trial centered around the fact that his
> prior counsel had subpoenaed Linda Davis to testify as an expert at trial but
> the witness had failed to obey the subpoena.  Nevertheless, at trial, [Baker]
> never brought to the attention of the trial court the fact that Ms. Davis had
> not complied with the subpoena.  By [Baker's] own silence, the court was
> deprived of any opportunity to enforce the subpoena.   In light of the fact
> that [Baker] neglected to bring to the trial judge's attention the failure of
> Ms. Davis to obey the subpoena, the witness's disobedience of the

subpoena did not constitute a valid ground for a new trial.

ECF No. 5, Ex. 2, at 10–11.  In a footnote, the Court of Special Appeals observed that Linda

Davis's testimony would have been inadmissible on relevance grounds.  *Id.* at 11 n.2.

Baker raised his compulsory process claim again during post-conviction proceedings.

The post-conviction court rejected the claim, stating: [7]

> You've raised the issue of whether the Court refused to enforce your
> subpoena for a witness to testify as an expert about the effects of rape on an
> individual. Well, in this case, what the standard is is that you have to show
> that this is a crucial witness that would be helpful. That's under *White v.
> Warden,* also *Ballard v. State*, but we haven't even gotten to that point. You
> didn't even get to that point.
>
> You've asserted that Mr. Fili and Mr. Macdonell -- or actually, Mr. Fili
> as well as another individual were able to contact Ms. Davis and that Ms.
> Davis still said that she's not coming to court. Then you claim that it's the Judge's
> responsibility to call that individual witness to request that they come to court.
>
> You are certainly in a difficult position if you expect the Court will
> make that call when the Court has no obligation to do that. You have the
> obligation to decide how you want your subpoena enforced, making a call or
> asking the Court to issue a body attachment.
>
> I understand why you didn't want the Court to issue a body attachment,
> but those were your only two options. Having the Court make the call to your
> witness is not something that would have insured that the witness would have
> shown up. You haven't shown that to be the case, and your declining to ask the
> Court to issue a body attachment was to your detriment, but those are the
> circumstances that you created yourself.  So you haven't shown me that the
> outcome of the case, even if that witness had appeared at the request of Judge
> Baldwin, would have been different if you were able to present that information.
> We never even got to that point.

ECF No. 20, Ex. 16 at 7–8.

The Sixth Amendment to the Constitution of the United States provides, in part: "In

10

all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process

for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." U.S.

Const. amend. VI.  The right to compulsory process applies to state prosecutions through the Due

Process Clause of the Fourteenth Amendment.  *See Washington v. Texas*, 388 U.S. 14, 17–18

(1967).  The right is not absolute: a defendant does not have the right, via compulsory process,

"to secure the attendance and testimony of any and all witnesses."  *United States v. Valenzuela-*

*Bernal*, 458 U.S. 858, 867 (1982).  Rather, the Sixth Amendment "guarantees him 'compulsory

process for obtaining *witnesses in his favor*.'"  *Id.* (emphasis in original) (quoting U.S. Const.

amend. VI).  Thus, for the court to find that a constitutional violation has occurred, the defendant

must "at least make some plausible showing of how their testimony would have been both

material and favorable to his defense."  *Id.*; *see also U.S. v. Moussaoui*, 382 F.3d 453, 471

(2004) ("[A] defendant must demonstrate that the witness he desires to have produced would

testify 'in his favor.'") (quoting U.S. Const. amend. VI).

     The Court of Special Appeals and the state post-conviction court both concluded Baker

never asked the trial court to enforce Davis's subpoena, ECF No. 20, Ex. 16, at 7–8; *see also*

ECF No. 5, Ex. 2 at 10–11.  Further, Baker failed to demonstrate that Davis's testimony was

admissible in the first instance given that Davis did not interview Kubanek or any other witness

in the case.  ECF No. 20, Ex. 12, 767–68; ECF No. 5, Ex. 2, at 11 n.2.  Nor did Baker establish

that Davis's testimony would assist his defense.  For all these reasons, denial of this claim was a

reasonable application of Supreme Court precedent and there are no grounds for federal habeas

relief.

     **B.  Claim a Sitting Juror was Improperly Excused**

Baker next claims that the trial court denied the defense "fair jury selection" by replacing

Juror No. 7 with an alternate during trial after it was discovered that the juror was unfit for jury

service. Pet. 5–6, ECF No. 1. As a threshold matter, the court notes that Baker fails to claim

violation of a specific federal constitutional right or provision. *See id.* Absent violation of a

federal constitutional or statutory right, the claim is not cognizable on federal habeas review.

*See* 28 U.S.C. § 2254(a) (authorizing a federal court to entertain a state prisoner's habeas petition

"only on the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States"); *Wilson v. Corcoran*, 131 S. Ct. 13, 14 (2011) (per curiam) ("Federal courts may

not issue writs of habeas corpus to state prisoners whose confinement does not violate federal

law."). The claim is dismissible on this basis.

Even were this claim to proceed, it provides no grounds for relief. On the last day of

trial, the prosecutor informed the court that Juror No. 7 had a felony conviction that had not been

disclosed during voir dire. ECF No. 20, Ex. 11, at 688–691. The trial court proposed replacing

Juror No. 7 with an alternate, and the parties agreed. *See id.* Baker first complained about Juror

No. 7's dismissal in his motion for new trial. ECF No. 20, Ex. 12, at 759–63. The trial court

denied the motion for new trial on this basis, *see id.*, at 782, and the ruling was upheld by the

Court of Special Appeals, which stated: "When the prosecutor asked for the removal of Juror No.

7 to be replaced by an alternate, appellant did not object. Thus, he waived any right to later

complain that the court erred in allowing the dismissal." ECF No. 5, Ex. 2, at 10.

Baker raised this claim again in state post-conviction proceedings. The state post-

conviction court rejected the claim, stating:

> With respect to the issue of voir dire, as an allegation of error, you've
> indicated that Mr. Fili, seeking to have a juror dismissed because of

12

discovery during trial of the [juror's] -- the true nature of the [juror's] criminal background, is error.  A juror who is not qualified to sit can't be deemed qualified to sit.  So if you find that out at some point during the trial, it's the obligation of counsel to bring that to the Court's attention.  That's the rule.  It's the obligation of counsel to bring that to the Court's attention.

A trial isn't simply a matter of if you didn't discover it at the outset, and in this case in voir dire, you discover it later, too bad, so sad.  It doesn't work that way.  If they're not constitutionally eligible to sit as a juror, then certainly there are a number of options that the Court could elect in that case.  The Court in this case elected to have that juror excused and have an alternate take that juror's place.

There hasn't been any prejudice or abuse of discretion shown by you, which is what's required by case law.  *James v. State, Tisdale v. State*.  And, also, you didn't object.  You have to object at that time, and there was no objection at that point.  Yes, you raised it on appeal, and the appellate court has dealt with that, but you have to object at the trial.  There was no objection.  There's no error, and there's no prejudice or abuse of discretion, which is the standard set by the appellate court.

ECF No. 20, Ex. 16, at 6–7.

Baker has shown no prejudice from replacing Juror No. 7.[8]  The juror was dismissed because she was not qualified for jury service.  ECF No. 20, Ex. 11, at 688–91.  She was replaced by an alternate whom Baker had chosen during the voir dire process as an anticipated replacement for any juror who was unable to serve through the completion of the trial.  *See id*.

Baker has failed to demonstrate that the decision of the post-conviction court  was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  An

---

[8]   Baker states "[n]o replacement by defense was possible" on the last day of trial.  Pet. 2, ECF No. 1.  In the trial transcript, Baker appears to acknowledge that Juror No. 7 was unqualified to serve on the jury.  ECF No. 20, Ex. 11, at 689.  He does not dispute his failure to raise an objection at trial.  Pet. 2, ECF No. 1.

unqualified juror was replaced with an alternate without objection from Baker.  Baker has failed

to demonstrate any resulting harm. There is no cause to disturb the decision of the state post-

conviction court on the basis of this claim.

### C.  Failure to Release on Own Recognizance Claim

Baker contends he was denied a fair trial because he was not released on his own

recognizance following the appellate court's reversal of the verdict in his first trial.  Pet. 6–8,

ECF No. 1.  Baker asserts he was unfairly held in jail "for 11 months (using the unfair

conviction) keeping the sentence running after the reversal," ECF No. 21, at 1, but fails to

identify a federal law or constitutional right allegedly abridged by the facts alleged. There is no

right to be released on one's own recognizance.[9]  Consequently, the claim does not state a

cognizable basis for federal habeas corpus relief.

Even were this court to consider this claim, there is no cause for habeas relief. The state

post-conviction court rejected this claim, explaining:

> So with respect to those things, the reason I don't find there is any
> merit to them is that bail certainly has to be considered, but releasing
> someone on their own recognizance is not a right simply because
> they feel that they meet certain criteria.  The rule is quite clear, and
> the statute and any case law interpreting the Rule is also quite clear:
> The Court has the discretion whether to grant bail by considering
> factors that in summary show whether the defendant is a danger to
> others in the community, whether the defendant is a flight risk.  So
> there are a number of variants within that summary that can be
> considered.  So it isn't simply a matter of because you present
> information about where you are going to be residing, whether your

---

[9]   The court recognizes Baker is a self-represented litigant and accords his pleadings liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  To the extent he might have intended to state an Eighth Amendment claim, the Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.  The prohibition against excessive bail applies to the states under the Fourteenth Amendment, but it does not serve as a basis for the accused to insist on release without bail or on their own recognizance.  *See Pilkinton v. Circuit Court of Howell Cnty.*, 324 F.2d 45,46 (8th Cir. 1963).

criminal history [is] minimal or nonexistent, it's not simply that, it's about a number of factors that the Court has the discretion to consider in making that determination.

Let's say everything is perfect.  It still doesn't mean that there is a right to be released on one's own recognizance.  The Court still has a duty to determine in light of all of the things that it needs to consider whether bail should be set, and in this case, I haven't heard that there is any error in the way that the Court considered those things.

It is clear that the State presented some information about why bail should be denied, and that the defense had the opportunity to present information not only about bail being given but also why you should have been released on your own recognizance.  The Court took all of that into consideration. It wasn't just simply a matter of saying that just because there had been an earlier trial upon which you had been convicted and then there was a reversal and remand that that is all the Court considers.  It's clear the Court in every instance, every Judge considered all of the factors that the Judge was required to consider.

I understand that you believe that Mr. Fili may have contaminated or tainted your ability to reside with a certain individual.  It is still within the purview of the State to make an argument based on information that it can discover about whether they feel that you will be a danger to anybody else in the community, and to make arguments and develop information about why they feel that is not the case.  So that in and of itself wasn't the persuasive thing to any of the Judges who considered the bail issue.  They looked at all of the factors, and that was but one of the factors.

ECF No. 20, Ex. 16, at 2–4.  The trial court considered Baker's request for release on his own

recognizance prior to his second trial several times, but concluded each time that it was

appropriate in Baker's case to set bail at $50,000.  ECF No. 20, Ex. 4, at 20–21.  On the first

occasion, the court said it would consider reducing bail if certain information was supplied.  *See*

*id*.  One month later, the court reconsidered the bail amount, but concluded "There are just too

many twists and turns and unanswered questions in this particular matter.  So I am going to leave

the bail set at $50,000 as it was previously."  ECF No. 20, Ex. 5, at 18.  The court reconsidered

bail again in December of 2004 and determined that recognizance was not appropriate given the

gravity of the offense and the fact that the prior reversal "did not go to the heart of the case."

ECF No. 20, Ex. 6, at 6–7.  The court maintained the $50,000 bail, observing that it was "lower"

than the court would normally set under the circumstances.  *Id.*  Under these facts, the court finds

no factual or legal grounds to warrant habeas corpus relief.

### D.  Obstruction of Justice Claim

Baker claims the prosecutor obstructed justice by denying that he attempted to contact

Gracia Kubanek prior to the second trial.  Pet. 9–10, ECF No. 1.  In order for prosecutorial

misconduct to constitute a denial of due process, it must be "of sufficient significance to result in

the denial of the defendant's right to a fair trial."  *United States v. Bagley*, 473 U.S. 667, 676

(1985) (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976)).  To reverse a conviction on the

grounds of prosecutorial misconduct, it must be shown that: (1) "that the prosecutor's remarks or

conduct were improper" and (2) the remarks or conduct "prejudicially affected his substantial

rights so as to deprive him of a fair trial."  *United States v. Caro*, 597 F.3d 608, 624–25 (4th Cir.

2010) (quoting *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002)).

The record shows the prosecutor's attempt to contact Kubanek was unsuccessful.  *See*

ECF No. 20, Ex. 8, at 125, 159–62.  Defense attempts to contact Kubanek also proved

unsuccessful.  *Id.* at 125–37.  Although the defense argued that the prosecution persuaded

Kubanek to leave the country, *id.* at 140–163, the trial court, after holding an evidentiary hearing,

found no evidence to support this assertion, *id.* at 163–64.  No appeal from this ruling was taken,

and the issue was not raised as a separate claim in state post-conviction proceedings, on direct

appeal, or in state post- conviction proceedings at the circuit court level or at the appellate level.

*See* ECF No. 20, Ex. 16; Pet. 2–19, ECF No. 1.[10]  As noted above, the defense was allowed to

introduce Kubanek's prior trial testimony.  Baker does not contend in his petition that Kubanek's

testimony would have been materially different had she been available to testify at his second

trial.  In sum, Baker fails to demonstrate the prosecutor's conduct was improper or "prejudicially

affected his substantial rights so as to deprive him of a fair trial."  *Caro*, 597 F.3d at 624–25.

Where, as here, the state court conducts an evidentiary hearing and explains its reasoning

with some care, it is "particularly difficult to establish clear and convincing evidence of error on

the state court's part."  *Sharpe*, 593 F.3d at 378.  In this case, Baker fails to show the state's

adjudication "resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established federal law, as determined by the Supreme Court of the United States" or

"resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The state court's

ruling is supported by the record, and this claim therefore provides no grounds for relief.

### E.  Ineffective Assistance of Counsel

Lastly, Baker contends that his appellate counsel provided ineffective assistance by

failing to effectively present claims that the trial court erred by denying him compulsory process

and by replacing Juror No. 7.  Pet. 11, ECF No. 1. Baker asserts:

---

[10]   Accordingly, this claim is dismissible under principles of procedural default.  Procedural default
occurs "when a habeas petitioner fails to exhaust available state remedies and the court to which the
petitioner would be required to present his claims in order to meet the exhaustion requirement would now
find the claims procedurally barred." *Hyman v. Keller*, No. 10–6652, 2011 WL 3489092, at *9 (4th Cir.
2011) (quoting *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998)); *see also* 28 U.S.C. § 2254(b)(1)(A)
(requiring exhaustion of state court remedies).  The exhaustion requirement under § 2254 requires that a
petitioner give "the state courts one full opportunity to resolve any constitutional issues by invoking one
complete round of the State's established appellate review process." *Larry v. Branker*, 552 F.3d 356, 366
n.10 (4th Cir. 2009) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

       After reading results from the direct appeal to the Maryland Court of
Special Appeals Case No. 1686 Sept Term 2005 [citation omitted] several
material mistakes of fact in the Appeal decision were noted by Defendant
and placed in his Pro Se Post Conviction Product to support reversal.
Information that was needed to obtain a clear reversal of the trial results
was in the possession of the Public Defender Appeal Attorney at the time
of the processing and submission of the direct appeal.  In addition,
defendant had reviewed the attorney's brief and discovered the missing
information from memory and knew the appeal attorney had access to it in
the trial transcripts.  Defendant had asked the attorney to develop his
product better and more complete (twice) but got ignored.  Consequently
denial of appeal resulted from no R & D from Public Defender on material
issues in direct Appeal.  The Appeal Decision indicates Reversal was
necessary if Defendant's position on issues had been established.  R & D
by Defendant in his post-conviction product shows the necessary
information for reversal.  This information, i.e. information showing court
denial of Compulsory Process after defendant told the court he needed it,
and material facts on the Voir Dire issue shows the states knowledge of a
criminal record during Voir Dire on juror no. 7.  Four days later State used
the criminal record to strike juror no. 7 on the last day of trial citing their
Standard Practice criteria.  No replacement by defense was possible at that
time.  The ineffective assistance of appeal counsel issue was not addressed
on direct Appeal, however, it was addressed in Post-Conviction Appeal.
The Judge from post conviction indicated the Public Defender Appeal
attorney did the best he could.

Pet. 11, ECF No. 1.

     Ineffective assistance claims are reviewed under the two-part test established in

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Bell v. Cone*, 535 U.S. 695, 698–99

(2002) (explaining the interplay between *Strickland* and 28 U.S.C. § 2254(d)).  To establish

ineffective assistance of counsel, it must be shown that counsel's performance was deficient and

prejudiced the defense.  *See Strickland*, 466 U.S. at 687.  Counsel's performance is deficient if it

falls below "an objective standard of reasonableness."  *Id*. at 688.  Counsel's performance must

have been outside "the range of competence demanded of attorneys in criminal cases."  *Id*. at 687

(citation and internal quotation marks omitted).  Review of attorney competence is "highly

deferential" and there is a "strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance." *Id*. at 689.  A petitioner must overcome the presumption

that the challenged action was "sound trial strategy."  *Id*.  To establish prejudice, it must be

demonstrated that (1) counsel's errors deprived the defendant of a fair trial whose result is

reliable, and (2) it is probable that, but for counsel's errors, the result would have been different.

*See id*. at 690–94.  A determination need not be made concerning the attorney's performance if it

is clear that no prejudice would have resulted had the attorney been deficient.  *See id*. at 697.

Further, to demonstrate ineffective assistance in the context of a § 2254 federal habeas

proceeding a petitioner must show the state court applied *Strickland* to the facts in an objectively

unreasonable manner.  *See Bell*, 535 U.S. at 698–99; *Williams*, 529 U.S. at 405–06.

      In its rejection of Baker's claim of ineffective assistance of appellate counsel, the state

post-conviction court said:

> Lastly, with respect to the issue of whether there was ineffective
> assistance of appellate counsel, the case law requires that you show that
> there is prejudice, and by saying that Mr. Peabody did not develop
> arguments fully or cite to the record appropriately, you still haven't shown
> me what the prejudice is.  There may be a disagreement between you and
> Mr. Peabody about how to conduct the appeal, but that still falls within the
> purview of the appellate attorney to make that decision, and more so, the
> appellate court certainly considered all of the issues raised.  It wouldn't
> have mattered that Mr. Peabody didn't develop the arguments to your
> satisfaction, the appellate court considered the arguments fully.  So you
> haven't shown prejudice just by making the argument that he didn't do it
> to your satisfaction.
>
> I understand your comparison to your work as a CPA or auditor, but
> that's very, very different with respect to the standard set by the appellate
> court as to what ineffective assistance of appellate counsel is constituted
> by, and you haven't shown prejudice in that regard. The issues were
> raised, the appellate court considered them, and just because you and Mr.
> Peabody might have developed the arguments differently, does not
> constitute ineffective assistance of counsel.

ECF No. 20, Ex. 16, at 9–10.

The record supports the findings of the post-conviction court.  On direct appeal counsel argued the trial court had abused its discretion by denying Baker's motion for new trial, a claim premised in part on the trial court's handling of the replacement of Juror No. 7 and the absence of Baker's proposed witness, Linda Davis.  *See* ECF No. 5, Ex. 2, at 10–11; ECF No. 20, Ex. 13, at 2, 9–10 & Ex. 14, at 19, 21–23.  The Court of Special Appeals determined the allegations of error lacked merit and affirmed the trial court's decision to deny a new trial.  ECF No. 5, Ex. 2, at 12–13.  Baker's conclusory allegations that appellate counsel needed to develop a better "product," to meet the exacting and deferential standard for demonstrating ineffective assistance in a  § 2254 proceeding, fail. Baker's disappointment with the outcome of his direct appeal does not equate to constitutionally ineffective representation.  He fails to show that the state court's findings on this issue were unreasonable, that his appellate counsel's performance was deficient, or that he was prejudiced by appellate counsel's performance.  Consequently, the claim will be denied.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell*, 537 U.S. 322, 327(2003).  Because there has been no

substantial showing of the denial of a constitutional right, a certificate of appealability shall be

denied.  *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the aforesaid reasons, the court will deny the petition by separate order to follow.


     June 27, 2012                                           /s/

Date                                                   Catherine C. Blake

                                                   United States District Judge